EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Unión General de Trabajadores<br><br>Peticionaria<br><br>v.<br><br>Centro Médico del Turabo, Inc.<br>h/n/c HIMA San Pablo Caguas<br><br>Recurridos | Certiorari<br><br>2023 TSPR 86<br><br>212 DPR ___ |

Número del Caso: CC-2022-0585

Fecha: 30 de junio de 2023

Tribunal de Apelaciones:

    Panel X

Abogado de la parte peticionaria:

    Lcdo. Edwin Rivera Cintrón

Abogado de la parte recurrida:

    Lcdo. José A. Morales Boscio

Materia: Derecho Laboral – La exoneración estatutaria por ausencia o insuficiencia de ganancias para sufragar el bono de navidad no abarca a aquellos empleados que el Departamento del Trabajo y Recursos Humanos exceptuó expresamente de su aplicación.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión General de Trabajadores

      Peticionaria

         v.               CC-2022-0585

Centro Médico del Turabo, Inc. h/n/c HIMA San Pablo Caguas

      Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 30 de junio de 2023.

En esta ocasión tenemos la encomienda de determinar si el Hospital HIMA quebrantó los convenios colectivos entre las partes al rehusar pagar a sus empleados unionados el bono de navidad correspondiente al año 2015. Contestamos en la afirmativa debido a que el Hospital HIMA no obtuvo una exoneración que le relevara de su obligación contractual. Específicamente, resolvemos que la exoneración estatutaria por ausencia o insuficiencia de ganancias para sufragar el bono de navidad no abarcó a aquellos empleados que el Departamento del Trabajo y Recursos Humanos exceptuó expresamente de su aplicación —en este caso los empleados cobijados por un convenio colectivo—.

I

El 29 de abril de 2011 la Unión General de Trabajadores (UGT), en representación de los empleados comprendidos en la unidad de profesionales y la unidad de no profesionales, suscribió dos convenios colectivos con el Centro Médico del Turabo h/n/c Hospital HIMA San Pablo de Caguas (Hospital HIMA). En ambos convenios, aplicables a cada unidad apropiada respectivamente, las partes acordaron el pago de una compensación salarial especial por concepto de bono de navidad. Sobre este aspecto, el Artículo 17 de los convenios disponía:

Sección 1 - <u>Cuantía del Bono de Navidad</u>

**El Hospital concederá a todos los empleados** que hayan trabajado setecientas (700) horas o más dentro del período de doce (12) meses, desde el primero de octubre de cualquier año natural hasta el 30 de septiembre del siguiente año, **bajo los términos dispuestos en ley, un Bono de Navidad equivalente al seis por ciento (6%) de los ingresos hasta un máximo de diez mil dólares ($10,000.00) o el tres por ciento (3%) de los ingresos hasta un máximo de cuarenta mil dólares ($40,000.00), lo que sea mayor.** (Negrilla suplida). Apéndice del recurso de *certiorari*, págs. 37 y 113.

Así las cosas, el 30 de noviembre de 2015, el Hospital HIMA comunicó al Departamento del Trabajo y Recursos Humanos (Departamento del Trabajo) que estaba imposibilitado de sufragar el bono de navidad, a raíz de las pérdidas operacionales que sufrió. En esa dirección, solicitó que se le eximiera de pagar el bono correspondiente a ese año. Recibida la solicitud, el Departamento del Trabajo, a través de su Negociado de Normas del Trabajo (Negociado), notificó

que los documentos cumplían preliminarmente en cuanto a término y forma. Informó, sin embargo, que la decisión no aplicaría a los empleados unionados que estuvieran cobijados por algún convenio colectivo.

En repuesta, el Hospital HIMA pidió que se aclarara y eliminara lo dispuesto en cuanto a los empleados unionados. A su juicio, los convenios colectivos establecieron que el pago del bono de navidad se haría bajo los términos dispuestos en ley, y por ello, la dispensa debía ser extensiva a estos empleados. Posteriormente, el Departamento del Trabajo replicó que por mandato del Art. 6 de la Ley del Bono de Navidad en la Empresa Privada, infra, la exoneración otorgada solo aplicaría a los empleados que no formaran parte de las unidades apropiadas.

Descontento con la decisión de excluir a los empleados unionados de la exoneración, el Hospital HIMA presentó una demanda sobre sentencia declaratoria contra el Departamento del Trabajo. No obstante, el foro primario emitió una sentencia desestimatoria, que advino final y firme.

Entretanto, en vista de que el Hospital HIMA no satisfizo el bono de navidad a sus empleados unionados, la Unión presentó dos querellas ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo, con el propósito de reclamar el pago respectivo. Tras varios acontecimientos, la audiencia de arbitraje se llevó a cabo el 14 de febrero de 2019. Por no lograr un acuerdo de sumisión, el árbitro, Jorge E. Rivera Delgado, juzgó que la

controversia se centraba en determinar si el Hospital HIMA violó los convenios colectivos al no remunerar el bono de navidad correspondiente al año 2015. Cabe puntualizar que las partes pactaron que la determinación del árbitro sería conforme a derecho.[1]

Con el beneficio de la prueba vertida, el árbitro resolvió que el Hospital HIMA infringió el Art. 17 de los convenios colectivos objetos del litigio. Expuso que las disposiciones de la Ley del Bono de Navidad en la Empresa, infra, referentes a la exoneración del pago del bono de navidad, no aplicaban a los empleados unionados de la empresa. En consecuencia, ordenó al Hospital HIMA remunerar la aludida bonificación y una suma igual por concepto de una compensación adicional o penalidad, satisfacer el interés legal vigente, y sufragar los honorarios de abogado a razón de 25% del total adeudado.

Inconforme, el Hospital HIMA incoó un recurso de revisión e impugnación de laudo arbitral ante el Tribunal de Primera Instancia. En lo sustantivo, arguyó que no estaba obligado a costear el bono de navidad debido a que el Departamento del Trabajo le exoneró del pago. A su entender, el dictamen arbitral era erróneo porque los convenios colectivos sujetaban y condicionaban el pago del bono a los términos estatutarios y, por consiguiente, a la exoneración

---

[1] El Art. 13(3) de los convenios colectivos en cuestión disponía lo siguiente: "La decisión escrita del árbitro sobre los méritos de cualquier querella adjudicada [,] será final e inapelable únicamente si dicha decisión es de acuerdo al derecho y la jurisprudencia aplicable". Ap. del recurso de certiorari, págs. 25 y 104.

por insuficiencia de ganancias. Argumentó que así lo revelaba la prueba presentada sobre la intención de las partes y sus prácticas pasadas.

En contraposición, la Unión adujo que el pacto colectivo requería el pago obligatorio del bono de navidad. En suma, sostuvo que era improcedente utilizar el proceso de exoneración en contra de los empleados unionados. En esa línea, alegó que la legislación de bonificación pautaba de forma expresa que sus disposiciones son inaplicables a los empleados que reciben algún bono anual mediante convenio colectivo.

Atendidos los argumentos de las partes, el Tribunal de Primera Instancia dictó sentencia y anuló el laudo arbitral. Como punto de partida, reseñó que el árbitro ignoró la prueba desfilada sobre las prácticas pasadas y la intención de las partes al mantener en los convenios la frase "bajo los términos dispuestos en ley". Así, determinó que el acuerdo entre las partes tuvo el efecto de condicionar el bono a que el patrono obtuviera ganancias para sufragarlo. En esencia, concluyó que el Hospital HIMA no tenía que remunerar el bono de navidad contendido porque los convenios colectivos permitían utilizar el mecanismo estatutario de exoneración por estrechez económica.

Tras presentar una solicitud de reconsideración que fue denegada, la Unión presentó un recurso de *certiorari* ante el Tribunal de Apelaciones, con el objetivo de que se reinstalara el laudo arbitral. Señaló que el foro primario,

en sustitución del criterio del árbitro, realizó un juicio *de novo* equivocadamente. Asimismo, hizo referencia a que el estatuto laboral estableció claramente la inaplicabilidad de sus disposiciones a los empleados cobijados por un convenio colectivo vigente. Por otra parte, el Hospital HIMA se opuso.

Evaluados los planteamientos de las partes, el foro apelativo intermedio confirmó el dictamen del Tribunal de Primera Instancia. Al así hacerlo, coligió que el foro primario, con el beneficio de la prueba presentada en la vista de arbitraje, emitió una Sentencia fundamentada y conforme a derecho. En desacuerdo, la Unión solicitó reconsideración, pero fue denegada.

Aun insatisfecha con este desenlace, la Unión presentó un recurso de *certiorari* ante nos. Su contención principal estribó en que el Hospital HIMA debía pagar el bono de navidad a los empleados unionados. En síntesis, esgrimió que la legislación y la determinación del Departamento del Trabajo denotaban claramente que la exoneración estatutaria no aplicaba a los empleados albergados por los convenios colectivos. La Unión también reiteró que la interpretación del árbitro merecía deferencia y que, al revocar el laudo, el Tribunal de Primera Instancia realizó de forma indebida un juicio *de novo*, avalado por el foro apelativo intermedio.

Por el contrario, el Hospital HIMA insistió en que, según las prácticas pasadas, los convenios colectivos le permitían acogerse al proceso estatutario de exoneración del pago del bono de navidad por incapacidad económica.

Trabada así la controversia, y expedido el recurso, con el beneficio de la comparecencia de las partes, procedemos a resolver.

II

A. *Arbitraje obrero patronal*

En nuestro ordenamiento jurídico existe una política pública vehemente a favor del arbitraje obrero-patronal como un método alterno ideal, flexible y menos oneroso que el litigio judicial, para dirimir las disputas que emanan de la relación laboral. Aponte Valentín *et al*. v. Pfizer Pharm., 208 DPR 263, 282 (2021); H.R., Inc. v. Vissepó & Diez Constr., 190 DPR 597, 605 (2014); HIETel v. PRTC, 182 DPR 451, 456 (2011). A tono con esto, hemos reconocido que las determinaciones de los árbitros están revestidas de gran deferencia. UGT v. Centro Médico del Turabo, 208 DPR 944, 955 (2022); Aut. Puertos v. HEO, 186 DPR 425, 427 (2012); Vivoni Farage v. Ortiz Carro, 179 DPR 990, 1007 (2010).

Atada a esta norma de autolimitación, la revisión judicial de los laudos de arbitraje se circunscribe a determinar si hubo: fraude; conducta impropia del árbitro; falta del debido proceso de ley; ausencia de jurisdicción; omisión de resolver todas las cuestiones en disputa, o una determinación contraria a la política pública. Indulac v. Unión, 207 DPR 279, 295 (2021); Aquino González v. A.E.E.L.A., 182 DPR 1, 25 (2011); C.O.P.R. v. S.P.U., 181 DPR 299, 328 (2011). En cambio, cuando las partes pactan que el laudo arbitral sea emitido conforme a derecho, los tribunales

de justicia podemos revisar los méritos del laudo y corregir errores jurídicos. UGT v. Centro Médico del Turabo, supra, pág. 955; Indulac v. Unión, supra. Como es de esperarse, en esas instancias la revisión judicial será más incisiva, análoga al escrutinio de las decisiones administrativas. Depto. Educ. v. Díaz Maldonado, 183 DPR 315, 326 (2011); Constructora Estelar v. Aut. Edif. Pub., 183 DPR 1, 33 (2011).

En el caso ante nos, las partes acordaron que el árbitro debía emitir su determinación conforme al derecho y la jurisprudencia aplicable. Por ende, podemos revisar la corrección jurídica del laudo emitido, en toda su extensión. Como parte de ese cometido, más allá de interpretar los convenios colectivos, precisa remitirnos a las pautas del proceso de exoneración por estrechez económica.

B. *Exoneración estatutaria por estrechez económica*

La Ley del Bono de Navidad en la Empresa Privada, Ley Núm. 148 de 30 de junio de 1969, según enmendada, 29 LPRA sec. 501 *et seq.*, impone a los patronos del sector privado la obligación de pagar a sus empleados un bono de navidad anual, adicional a salarios y beneficios de otra índole. Para operacionalizar su implementación, el estatuto utiliza dos parámetros principales que varían según la legislación vigente a la fecha de contratación: el requisito mínimo de horas trabajadas y la cuantía mínima del bono. Véase, Guías para la Interpretación de la Legislación Laboral de Puerto Rico, 8 de mayo de 2019, págs. 95-96 (en

https://www.trabajo.pr.gov/docs/Boletines/Guias_Legislacion _Laboral.pdf).

En lo aquí pertinente, el diseño estatutario instituye que los empleados contratados con anterioridad a la Ley Núm. 4-2017, conocida como la Ley de Transformación y Flexibilidad Laboral, 29 LPRA sec. 121 *et seq.*, serán acreedores del bono si trabajan 700 horas o más para un mismo patrono, durante el periodo comprendido desde el 1 de octubre hasta el 30 de septiembre del año siguiente.[2] Art. 1 de la Ley del Bono de Navidad en la Empresa Privada, 29 LPRA sec. 501. De conformidad con el estatuto, cuando se emplee a dieciséis empleados o más, la cuantía del bono equivaldrá al 6% del total del salario devengado dentro del periodo de cobertura hasta un salario máximo de $10,000.[3] Íd.; Reglamento para administrar la Ley Núm. 148 de 30 de junio de 1969[...], Reglamento Núm. 9003 de 18 de septiembre de 2017, (Reglamento Núm. 9003), Art. VI, pág. 4.

Ahora bien, el patrono no tiene una obligación irrestricta de sufragar la bonificación estatutaria. El total de las cantidades pagadas por dicho bono no excederá el 15% de las ganancias netas anuales obtenidas dentro del periodo

---

[2] Mientras, los empleados contratados a partir de la vigencia de la Ley Núm. 4-2017, supra, tendrán derecho a recibir el bono estatutario si trabajan 1,350 horas dentro del periodo de cobertura.

[3] Este importe también corresponde a los empleados contratados con anterioridad a la vigencia de la Ley Núm. 4-2017, supra. A partir de la entrada en vigor de la Ley Núm. 4-2017, supra, todo patrono que emplee veintiún empleados o más durante más de veintiséis semanas dentro del periodo de cobertura, vendrá obligado a conceder un bono equivalente al 2% del total del salario devengado, hasta un bono máximo de $600.

Si el patrono cuenta con quince empleados o menos, se concederá a los empleados contratados previo a la vigencia de la Ley Núm. 4-2017, un bono equivalente al 3% del salario máximo de $10,000.

comprendido. Art. 1 de la Ley del Bono de Navidad en la Empresa Privada, supra. De no obtener ganancias o estas resultar insuficientes para cubrir el importe del bono, el patrono puede solicitar que se le exonere de la totalidad o parte del pago, no más tarde del 30 de noviembre de cada año. Art. 7 de la Ley del Bono de Navidad en la Empresa Privada, 29 LPRA sec. 507; Art. VII (4) del Reglamento Núm. 9003, supra. A tales fines, deberá notificar inicialmente al Secretario del Departamento del Trabajo y acreditar de manera fehaciente la situación económica del negocio. Íd.

Eso sí, el recibo de una solicitud de exoneración "no constituye una determinación sobre la corrección de la misma, pues esa evaluación la hace únicamente la División de Bono del D[epartamento del Trabajo]". Guías para la Interpretación de la Legislación Laboral, supra, pág. 106. Como corolario de su amplia facultad para administrar y fiscalizar la legislación laboral, el Departamento del Trabajo puede requerir información adicional en aras de considerar debidamente la notificación patronal. Art. 7 de la Ley del Bono de Navidad en la Empresa Privada, supra. También le es posible intervenir para comprobar las cuentas del patrono que solicita la exención. Íd.

En lo que aquí nos concierne, el Departamento del Trabajo ha interpretado que el proceso estatutario de exoneración del pago del bono de navidad es inaplicable en las instancias en que media un convenio colectivo vigente entre el patrono y sus empleados. Guías para la

Interpretación de la Legislación Laboral, supra, pág. 107. "En ese caso, le corresponde al patrono negociar el pago del bono directamente con el representante sindical [,] según lo pactado expresamente en el convenio colectivo correspondiente y la jurisprudencia interpretativa de la Junta Nacional de Relaciones del Trabajo, [d]e manera que puedan llegar a algún mecanismo análogo o solución". Art. VII (10) del Reglamento Núm. 9003, supra. Así pues, en términos generales, la determinación de la agencia sobre la exoneración parcial o total del pago del bono no surte efecto jurídico alguno para los empleados cobijados por un convenio colectivo. Guías para la Interpretación de la Legislación Laboral, supra, págs. 107-108.

La premisa anterior va inexorablemente atada al Art. 6 de la Ley del Bono de Navidad en la Empresa Privada, 29 LPRA sec. 506, que preceptúa la inaplicabilidad de las disposiciones de la referida ley respecto a aquellos trabajadores que reciben bonos anuales por virtud de convenios colectivos. Esto es así, "excepto en los casos en que el monto del bono a que tuvieren derecho mediante tales convenios colectivos resulte ser menor al que se provee mediante esta ley, **en cuyo caso recibirán la cantidad necesaria para completar el bono provisto por esta ley**". (Negrilla suplida). Íd.

Es decir, el convenio colectivo rige en aquellos supuestos en los que el bono contractual es igual o mayor al bono estatutario. Art. IV (2) del Reglamento Núm. 9003,

supra. Empero, los empleados que reciban el bono de navidad por virtud de un convenio colectivo tendrán derecho al monto mínimo estatutario, sin que esa garantía se interprete como que limita la facultad para acordar una suma mayor en ese concepto. Véase, Art. 6 de la Ley del Bono de Navidad en la Empresa Privada, supra. En otras palabras, en la eventualidad de que el bono convenido establezca un bono menor al estatutario, la Ley del Bono de Navidad en la Empresa Privada, supra, aplicará a los fines de que el patrono pague la cantidad adicional que se necesite para recibir la bonificación requerida por ley. Art. VII (9) del Reglamento Núm. 9003, supra. Nada impide que las disposiciones de la Ley del Bono de Navidad en la Empresa Privada, supra, se incorporen por referencia al convenio colectivo, "pero ello no tendrá el efecto de imponer al [Departamento del Trabajo] alguna obligación que no le haya impuesto la ley". Guías para la Interpretación de la Legislación Laboral, supra, pág. 108.

A modo ilustrativo, en Hosp. San Carlos, Inc. d/b/a/ Hosp. San Carlos Borromeo & Unidad Laboral de Enfermeras(os) y Empleados de la Salud., 355 NLRB 153, 159 (2010), la Junta Nacional de Relaciones del Trabajo interpretó que la exoneración por estrechez económica no abarca a quienes reciben bonos contractuales producto de convenios colectivos. Véase, además, San Juan Bautista, Inc., 356 NLRB 736, 737 (2011). Allí, el Departamento del Trabajo revocó la exoneración otorgada bajo la noción de que la Ley del Bono de Navidad en la Empresa Privada, supra, no rige en las

instancias en que los empleados y el patrono pactan un bono de navidad anual. Hosp. San Carlos, Inc. d/b/a/ Hosp. San Carlos Borromeo & Unidad Laboral de Enfermeras(os) y Empleados de la Salud, supra.[4] "La única excepción se configura cuando el bono contractual es menor al bono estatutario, en cuyo caso se abonaría a los trabajadores el importe de la bonificación estatutaria". (Traducción nuestra). Íd.[5]

III

La médula de la controversia de marras estriba en determinar si el Hospital HIMA violó los convenios colectivos aplicables al rehusar pagar el bono de navidad correspondiente al año 2015. Particularmente, debemos examinar el ámbito de aplicación de la exoneración que recibió el patrono.

Como se desprende de los hechos reseñados, a través del convenio colectivo las partes acordaron una compensación monetaria especial en concepto de bono de navidad. En esa dirección, se consignó que el Hospital HIMA concedería un bono de navidad a los empleados que trabajaran 700 horas o más dentro del período comprendido "bajo los términos dispuestos en ley". Según pactado, el bono sería equivalente

---

[4] El texto original reza: "Even if the statutory provisions of the Christmas Bonus Law were applicable to the Hospital the Puerto Rico Department of Labor and Human Resources withdrew its partial exoneration of payment for the Hospital of the 2008 Christmas bonuses because, as the Department noted, the provisions of the statute do not apply in cases, as is the case herein, where the employees receive annual Christmas bonuses by collective-bargaining agreement".

[5] La cita en inglés lee: "The only exception, not applicable here, is where the contractual bonus is less than the statutory one then the statutory bonus amount would be paid to the employees".

al 6% de los ingresos hasta un máximo de $10,000 o equiparable al 3% hasta un máximo de $40,000, lo que fuera mayor. Adviértase que los términos contractuales son casi idénticos a los plasmados en el Art. 1 de la Ley del Bono de Navidad en la Empresa Privada, supra.

En principio, los foros adjudicativos catalogaron que la controversia presentaba un asunto de estricta interpretación de los convenios colectivos y la aplicabilidad del proceso de exoneración estatutaria. De lo expuesto surge que las partes disputan e interpretan de forma distinta el lenguaje "bajo los términos dispuestos en ley", plasmado en el Art. 17 de los convenios colectivos.

Por un lado, la Unión arguyó que el lenguaje era claro, o en la alternativa, la frase se refería a identificar el número de horas y el periodo de trabajo necesario para ser acreedor del bono, ambos términos dispuestos al principio de la oración. Por su parte, el Hospital HIMA adujó que la intención de las partes fue condicionar el bono a las ganancias anuales y, por ello, la frase denotaba la posibilidad de solicitar y obtener la exoneración estatutaria.

Ahora bien, el raciocinio de ambas partes, aunque distinto, conduce al mismo resultado. Aun si interpretáramos que por virtud del convenio colectivo el Hospital HIMA podía acogerse al proceso de exoneración provisto en la Ley del Bono de Navidad en la Empresa Privada, supra, es indiscutible que el Departamento del Trabajo no le exoneró de pagar el

bono contractual a los empleados unionados. Por el contrario, al examinar preliminarmente la solicitud de exoneración, la agencia recalcó: "Si la empresa posee convenio colectivo esta decisión no aplicará a dichos empleados unionados, s[o]lo a aquellos empleados que no pertenezcan a la unidad apropiada". Ap. del *certiorari*, pág. 155.

Es más, luego de que el Hospital HIMA pidió que se eliminara lo dispuesto en este extremo, el Departamento del Trabajo ratificó, en dos ocasiones, que la exoneración otorgada únicamente aplicaría a los empleados no unionados. El Hospital HIMA no recurrió administrativamente de esa determinación. Incluso, cuando reclamó por la vía judicial que se extendiera la exoneración a los empleados unionados, el Tribunal de Primera Instancia dictó una sentencia desestimatoria, hoy día final y firme.

No cabe duda de que los convenios colectivos, como otros contratos, tienen fuerza de ley entre las partes, siempre que no contravengan las leyes, la moral o el orden público. AAA v. UIA, 199 DPR 638, 650 (2018); DACo v. AFSCME, 185 DPR 1, 21 (2012); HIETel v. PRTC, supra, 458. Si bien la Ley del Bono de Navidad en la Empresa Privada, supra, permite la exoneración del pago del bono de navidad por insuficiencia o ausencia de ganancias, la realidad es que, para el año 2015, no obra en el expediente determinación alguna que exonere al Hospital HIMA de pagar el bono contractual a los empleados de las unidades apropiadas. Nada impide que en los convenios colectivos se incorpore por referencia el proceso estatutario

de exoneración parcial o total del bono de navidad. Sin embargo, no por eso la exoneración otorgada —si alguna— es extensiva automáticamente a los empleados unionados. Recordemos que el patrono nunca se libera de su obligación de pago sin la aprobación previa del Departamento del Trabajo.

De hecho, el Departamento del Trabajo declinó extender la exoneración a estos empleados. El Hospital HIMA no podía arrogarse una exoneración que el Departamento del Trabajo no le otorgó. Aun dando por cierto que el convenio colectivo le permitía acogerse al proceso estatutario de exoneración, el Hospital HIMA no recibió exención alguna en lo que respecta a los empleados unionados.

Esta conclusión es inescapable, independientemente de la interpretación que se brinde al Art. 17 de los convenios colectivos. Dado que el patrono no obtuvo una exoneración para los empleados unionados, no tenemos que interpretar si las partes incorporaron o no el proceso de exoneración estatutaria por ausencia o insuficiencia de ganancias. Por eso, resulta innecesario adentrarnos en un ejercicio de hermenéutica contractual para disponer de la controversia de autos. Nótese que los convenios colectivos en controversia estuvieron vigentes hasta el 31 de diciembre de 2015.

Tras un examen riguroso del expediente ante nuestra consideración, diferimos del criterio de los foros inferiores. El laudo arbitral correctamente ordenó el pago del bono de navidad a los empleados que formaban parte de las

unidades apropiadas. Los foros recurridos incidieron al pasar por alto que el Hospital HIMA carecía de una exoneración que le relevara de satisfacer el bono contractual de estos grupos.

En resumidas cuentas, carente de una exoneración al respecto, el patrono no podía incumplir unilateralmente el pago del bono de navidad, y con ello, alterar los términos de los convenios colectivos. A la luz de lo expuesto, es insoslayable concluir que el Hospital HIMA incumplió los términos del convenio colectivo, al rehusar pagar el bono, sin autorización. Este análisis es suficiente para disponer por completo de la controversia.

IV

Por los fundamentos expuestos, se revoca la sentencia del Tribunal de Apelaciones. Por consiguiente, se reinstala el laudo arbitral.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión General de Trabajadores

     Peticionaria

     v.                CC-2022-0585

Centro Médico del Turabo, Inc. h/n/c HIMA San Pablo Caguas

     Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca la sentencia del Tribunal de Apelaciones. Por consiguiente, se reinstala el laudo arbitral.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo